**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **TAMMY HEDGECORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:23-CV-20 RHH** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Tammy Hedgecorth seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and Supplemental Security Income ("SSI") under Title XVI. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

**I.      Background and Procedural History**

On January 7, and January 15, 2021, respectively, Plaintiff filed applications for DIB and SSI, alleging she was disabled as of September 11, 2020 due to depression, post-traumatic stress disorder ("PTSD"), bipolar disorder, anxiety, panic attacks, and "heart stops beating and unable to breathe." (Tr. 216-217, 218-223, 239-246)[1]  The Social Security Administration ("SSA") denied Plaintiff's claims initially in March 2021, and upon reconsideration in May 2021. (Tr. 120-123, 125-128, 132-135, 137-138)  Plaintiff filed a timely request for a hearing before an administrative

---

[1] During the hearing before the ALJ, Plaintiff's attorney acknowledged that Plaintiff had a previous unfavorable decision. (Tr. 35)  He stated the alleged onset date in the current matter was the day after the previous decision was issued, or September 11, 2020. (*Id.*)  Plaintiff amended the date during the hearing, however, to January 19, 2021. (Tr. 36)

law judge ("ALJ").  (Tr. 139-140)  The SSA granted Plaintiff's request for review and conducted

a hearing in January 2022.  (Tr. 31-58)

In a decision dated February 10, 2022, the ALJ determined that Plaintiff "has not been

under a disability, as defined in the Social Security Act, from January 19, 2021, through the date

of this decision[.]"  (Tr. 10-30)  Plaintiff subsequently filed a request for review of the ALJ's

decision with the SSA Appeals Council, which denied review.  (Tr. 1-6)  Plaintiff has exhausted

all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.

*Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.    Evidence Before the ALJ

Plaintiff, born December 19, 1968, testified that she lives in a mobile home with a friend.

(Tr. 39-40)  She dropped out of school after the seventh grade, because she had a daughter with

cystic fibrosis and had to take care of her.  (Tr. 40)  She eventually took classes to try and obtain

a GED, but only made it as far as an eighth grade level.  (Tr. 40-41)  Plaintiff testified that she can

"barely" read and write, and is able to do simple math.  (Tr. 41)

From approximately 2003 to 2019, Plaintiff worked as a home health aide.  (Tr. 41-43,

241)  In that capacity she cooked, cleaned, shopped, helped with tasks around the house, and took

the vital signs of her clients.  (Tr. 42-43)

When the ALJ asked Plaintiff why she believed she was disabled, Plaintiff responded as

follows:  "The main reason I haven't been able to work is the—my depression and anxiety and

being around other people and then the ability to stand.  And then I—it's hard for me to learn new

things.  And I definitely can't pick people up anymore, to be able to do the line of work I used to

do."  (Tr. 44)  She elaborated by stating that her depression and anxiety started in 2014, when her

daughter died, followed almost immediately by her mother and father.  (Tr. 44-45)  She further

2

stated that she has panic attacks when she is around other people, and that she recently realized she is vulnerable to being scammed by others.  (Tr. 45-46)  Plaintiff testified that there are many times she crawls into bed and cries.  (Tr. 47)

With respect to physical conditions, Plaintiff testified that she experiences lower back pain from an injury she incurred when she was younger.  (Tr. 47)  She further has severe arthritis in her knee, elbows, back and neck from two prior car accidents, the latter of which caused her temporary amnesia.  (Tr. 47-48)  Plaintiff said her doctor is planning to monitor her heart for a month, because at some point she stopped breathing and had to be brought back to life.  (Tr. 49)[2]

A vocational expert testified at the hearing.  (Tr. 51-56)  The ALJ asked the vocational expert to consider a hypothetical individual similar in age and education to Plaintiff, with past relevant work as a home attendant/home companion[3], limited to work at the light level, and with the following limitations:

> This individual cannot climb ladders, ropes, or scaffolds and can occasionally climb stairs and ramps and occasionally stoop, kneel, crouch, and crawl.  In addition, this individual would be limited to work involving simple routine tasks and simple work-related decisions.  They're going to be limited to work that involves only occasional interaction with coworkers and supervisors and no interaction with the public.  Finally, this individual should do no fast-paced work such as work on an assembly line.

(Tr. 52)  The vocational expert opined that while such an individual would not be able to perform Plaintiff's past work, she could work as a merchandise marker, housekeeper cleaner, or laundry sorter.[4]  (Tr. 52-53)  The vocational expert further testified that if the employee consistently

---

[2] Plaintiff went to the hospital after the incident, and her records indicate there were cannabinoids, amphetamines, and benzodiazepines in her system.  (Tr. 386)  Plaintiff acknowledges that she smoked marijuana, but denies using any other illicit substances.  (Tr. 49-50)
[3] The vocational expert stated being a home companion is considered semi-skilled work at the medium exertional level.  (Tr. 51)
[4] The vocational expert stated that all three cited positions involve light, unskilled work.  (Tr. 53)

experienced two or more unexcused absences per month, job sustainability would be an issue and her employment would be at risk.  (Tr. 53)  With respect to off-task behavior, the vocational expert stated that in her experience, being off-task over twenty percent of the time for any reason would impact sustainability and preclude employment.   (Tr. 54)   Finally, upon questioning from Plaintiff's attorney, the vocational expert stated that if the hypothetical individual were limited to standing and walking only two hours in an eight-hour workday, she would not be able to engage in light work but would be limited to the sedentary realm.  (Tr. 55-56)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Uncontroverted Material Facts, which the Commissioner admitted with certain clarifications.  (ECF Nos. 12-1, 13-1)  The Court further adopts the facts set forth in Defendant's Statement of Additional Facts, which Plaintiff admitted with certain clarifications.  (ECF Nos. 13-2, 14-1)  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## III.      Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § [404.1509 or 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do

despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8ᵗʰ Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.920(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8ᵗʰ Cir. 2012); 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.    The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a), and found that Plaintiff: (1) had not engaged in substantial gainful activity since January 19, 2021, the amended alleged onset date; and (2) had the following severe impairments: osteoarthritis of the right knee, mild cervical spondylosis, obesity, major depressive disorder, and PTSD, that significantly limited her ability to perform basic work activities as required by SSR

6

85-28.  (Tr. 15-16)[5]  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16-18)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 19)  The ALJ stated Plaintiff's physical impairments do not support a more restrictive functional capacity, as

> [t]he claimant's treatment has been limited to right knee injections on two occasions.  The images of her knee do not indicate a condition so severe that she is unable to stand, as she alleges.  In addition, she has not had a follow-up MRI of her cervical spine and there is no imaging of her lumbar spine.  The claimant has not had any urgent care treatment, emergency treatment, or inpatient hospitalizations.  The claimant has not been referred to therapy or advised to consult with an orthopedist about her allegedly disabling back and knee impairments.  Her only treatment has been pain medication prescribed by her primary care physician.

(Tr. 20)  The ALJ further stated Plaintiff's mental health symptoms do not support a more restrictive functional capacity, as

> [t]he claimant's treatment has included primarily medication management, although she also did some therapy.  However, the claimant has not had any inpatient hospitalizations or more intensive outpatient therapy been recommended.

(Tr. 22)  The ALJ finally found there was considerable inconsistency between the information Plaintiff provided through her Adult Function Report and testimony at the hearing, and the symptoms reported in her medical records.  (*Id.*)

---

[5] The ALJ noted that although Plaintiff claimed a stroke and cardiac conditions as impairments that limit her ability to work, "[t]hese are not medically determinable impairments because they are not established by objective medical evidence from an acceptable medical source."  (Tr. 16)

> For example, at her most recent primary care appointment, she reported no difficulty concentrating, remembering or making decisions.  She said she had no difficulty walking or climbing stairs and was able to walk without restriction.  She reported no problems with dressing or bathing.

(*Id.*)

With respect to the medical opinions in the record, the ALJ found the opinions of the two State agency psychological consultants, in which they concluded Plaintiff retained the capacity to perform simple, repetitive tasks, were generally persuasive, although the ALJ found moderate limitations in all areas of mental functioning and included additional limitations consistent therewith.  (Tr. 22-23)

The ALJ found the opinions of the two State agency medical consultants, in which they concluded Plaintiff retained the capacity to work at the light exertional level with no additional limitations, were "persuasive to the extent that the light exertional level is consistent with and supported by the objective evidence, including, but not limited to, the x-rays of the claimant's cervical spine and right knee."  (Tr. 23)  The ALJ included postural limitations, however, "consistent with the medical records in evidence, especially with regard to the osteoarthritis in the right knee and obesity, and the claimant's reported symptoms."  (*Id.*)

The ALJ found the opinion of Dr. Richard Hester, Plaintiff's primary care physician, was "not persuasive because the extreme limitations included are not supported by the record, including Dr. Hester's own treatment notes and other medical evidence of record."  (Tr. 23)  The ALJ explained as follows:

> For example, his findings that the claimant is not able to work a normal eight-hour day, would need a five to ten minute break every 45 minutes, be off task at least 25% of the time, and be absent more than four days a month simply are not supported by persuasive evidence.  Although he was not treating her mental health impairments, Dr. Hester found she was incapable of performing even low stress work.  These limitations appear to be based

8

to some extent on nonmedically determinable impairments and symptoms reported by the claimant, but unsupported by objective medical evidence.

(*Id.*)

Finally, the ALJ considered the opinion of nurse practitioner Stacy Emerson, who prescribes medication for Plaintiff's mental impairments. He found Ms. Emerson's opinion was "more consistent with and supported by the evidence than Dr. Hester's opinion, except the findings of marked limitations are not persuasive." (Tr. 23) The ALJ explained as follows:

> Generally, her findings of moderate limitations in understanding and memory, sustained concentration and persistence, and social interactions are supported by the evidence, are consistent with the findings of moderate impairments in these areas, and the limitations in the residual functional capacity. However, the undersigned does not see any basis in the treatment notes for her conclusion that the claimant do[e]s not have the ability to complete a normal workday and workweek and perform at a consistent pace without additional breaks. Nor does the[re] appear to be evidentiary support for her findings of moderate to marked impairment in the claimant's ability to respond appropriately to changes in the workplace. Although she is limited by her limited education and narrow range of work experience, the claimant should have no difficulty working within the limitations in the residual functional capacity.

(*Id.*)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform light work, but with the following additional limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds and can occasionally climb stairs and ramps. She can occasionally stoop, kneel, crouch, and crawl. The claimant is limited to work involving simple, routine tasks and simple work-related decisions. She can perform work that involves occasional interaction with coworkers and supervisors and no interaction with the public. She cannot perform fast-paced work such as work on an assembly line.

(Tr. 18-19) Based on the vocational expert's testimony, the ALJ found that Plaintiff maintained the RFC to perform jobs that existed in significant numbers in the national economy, such as merchandise marker, housekeeper cleaner, and laundry sorter. (Tr. 25) The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from

January 19, 2021, through the date of the decision.  (*Id.*)

## V.     Discussion

Plaintiff challenges the ALJ's decision on two grounds:  (1) that the ALJ failed to comply

with SSR 96-8p, as he did not explain why he found the moderate limitations set forth in Ms.

Emerson's opinion persuasive, yet did not incorporate them into his RFC; and (2) that the ALJ

failed to comply with 20 C.F.R. §§ 404.1520c and 416.920c, as he did not properly address the

supportability and consistency factors in relation to Dr. Hester's opinion.  The Commissioner

counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff

is not disabled.

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C.

§ 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable

mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*,

858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).

A court must consider "both evidence that supports and evidence that detracts from the ALJ's

determination, [but it] 'may not reverse the Commissioner's decision merely because substantial

evidence supports a contrary outcome.'"  *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's

determinations regarding the credibility of testimony, as long as those determinations are

supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064

(8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the

Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d

847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

    B.   The ALJ Properly Incorporated Those Portions Of Ms. Emerson's Opinion He Found
        Persuasive

       In support of her claim, Plaintiff submitted a mental medical source statement ("MSS")

from her treating nurse practitioner, Ms. Emerson.  Ms. Emerson described Plaintiff's mental

diagnoses as major depressive disorder with anxious distress, severe with psychotic features, and

PTSD.  (Tr. 584)  She stated that Plaintiff's need to be absent from work would be variable, and

she would likely be off-task 10% of the time.  (*Id.*)  With respect to understanding and memory,

Ms. Emerson found Plaintiff had mild limitation[6] in her ability to understand and remember very

short and simple instructions, and moderate limitation[7] in her abilities to remember locations and

work-like procedures, and understand and remember detailed instructions.  (Tr. 584-585)  With

respect to sustained concentration and persistence, Ms. Emerson concluded Plaintiff had mild

limitation in her ability to make simple work related decisions; moderate limitation in her abilities

to carry out very short and simple instructions, carry out detailed instructions, maintain attention

and concentration for extended periods, perform activities within a schedule, maintain regular

attendance, be punctual within customary tolerances, sustain an ordinary routine without special

supervision, and work in coordination with or proximity to others without being distracted by

them; and marked limitation[8] in her ability to complete a normal workday and workweek without

---

[6] Ms. Emerson's MSS does not provide a definition for "mild limitation."
[7] "Moderately limited" is defined as follows:  "Impairment levels are compatible with some, but not all, useful functioning.  Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance."  (Tr. 584)
[8] "Markedly Limited" is defined as follows:  "More than Moderate, but less than extreme resulting in limitations that seriously interferes with the ability to function independently.  Considered to be 2 standard deviations blow the norm, or 60% overall reduction in performance."  (Tr. 584)

interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 585)  With respect to social interaction, Ms. Emerson found Plaintiff was mildly limited in her ability to ask simple questions or request assistance, and moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (*Id.*) Finally, with respect to adaptation, Ms. Emerson found Plaintiff was moderately limited in her abilities to be aware of normal hazards and take appropriate precautions and set realistic goals or make plans independently of others, moderately to markedly limited in her ability to respond appropriately to changes in the work setting, and markedly limited in her ability to travel in unfamiliar places or use public transportation.  (*Id.*)  Ms. Emerson noted her opinion was based on Plaintiff's medical history and diagnosis (meaning statement of disease or injury based on its signs and symptoms), rather than clinical findings (including mental status examinations) or laboratory findings.  (*Id.*)

As noted above, the ALJ found Ms.. Emerson's opinion was  "more consistent with and supported by the evidence than Dr. Hester's opinion, except the findings of marked limitations are not persuasive."  (Tr. 23)  The ALJ explained as follows:

> Generally, her findings of moderate limitations in understanding and memory, sustained concentration and persistence, and social interactions are supported by the evidence, are consistent with the findings of moderate impairments in these areas, and the limitations in the residual functional capacity.  However, the undersigned does not see any basis in the treatment notes for her conclusion that the claimant do[e]s not have the ability to complete a normal workday and workweek and perform at a consistent pace without additional breaks.  Nor does the[re] appear to be evidentiary support for her findings of moderate to marked impairment in the claimant's ability to respond appropriately to changes in the workplace.  Although she is

limited by her limited education and narrow range of work experience, the claimant should have no difficulty working within the limitations in the residual functional capacity.

(Tr. 23)

Plaintiff complains the ALJ did not adequately explain why he failed to incorporate into the RFC all of the moderate limitations posited by Ms. Emerson, despite apparently finding them persuasive.  Specifically, Plaintiff claims the ALJ (1) addressed the amount of interaction Plaintiff could have with supervisors, *i.e.*, "occasional", without addressing the quality of that interaction, and (2) failed to account for Plaintiff's limited ability to respond to changes in the workplace, maintain attendance, or perform within a schedule.  Plaintiff argues the ALJ should have either explained his reasons for discounting some of Ms. Emerson's limitations, or included those limitations in the RFC.

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted).  *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).

The Court's review of the record reveals the ALJ did not ignore the cited portions of Ms. Emerson's posited limitations, but rather declined to incorporate them into his RFC because he did not find them persuasive.  For example, with respect to Plaintiff's alleged inability to respond appropriately to criticism from supervisors, the ALJ noted that Plaintiff "also indicated she has never lost a job because of problems getting along with people." (Tr. 18, citing Exh. B4E; *see also* Tr. 260 (Plaintiff states in her Adult Function Report that she gets along "pretty well" with

authority figures, including bosses.))  He further stated that although Plaintiff reported anxiety leading to severe attacks, she also told Ms. Emerson that she was "getting out more with her grandkids", and that she was "doing holidays and birthdays with her family and had been shopping in the community." (Tr. 18, citing Exhs. B8F/10 (Tr. 501), B12F/2, 4, 6 (Tr. 561,563, 565)).  Based on these observations, the ALJ found Plaintiff was capable of occasional interaction with coworkers and supervisors.  (Tr. 19)

Plaintiff relies on *Bradley v. Kijakazi* to assert that although the ALJ limited Plaintiff to occasional interaction, "such limitation did not account for the fact that those interactions 'will not be the kind of normal, healthy, and fruitful interactions expected [of] a peer in the workplace.'" (*See* Plaintiff's Social Security Brief, ECF No. 12, P. 4, quoting *Bradley v. Kijakazi*, No. 1:22CV19 SNLJ, 2022 WL 4482407, at *8 (E.D. Mo. Sept. 27, 2022)).  Unlike in *Bradley*, however, the ALJ here discussed all of the medical evidence of record, including Ms. Emerson's own treatment notes, before determining that several of Ms. Emerson's findings were not supported.  (*See* Tr. 17-18, 21-22)  Thus, "[t]his is not a case when a reviewing court is without the ability to make a meaningful assessment of a challenge to the ALJ's evaluation of medical opinions."  *Abraham v. Kijakazi*, No. 1:22CV152 SNLJ, 2023 WL 3948816, at *6 (E.D. Mo. Jun. 12, 2023) (citations omitted).

With respect to Plaintiff's claim that the ALJ failed to account for Plaintiff's limited ability to respond to changes in the workplace, maintain attendance, or perform within a schedule, the Court notes the ALJ did not find those conclusions persuasive in the first instance.  (*See* Tr. 18 ("The nurse practitioner who prescribes the claimant's psychiatric medication indicated she would have marked difficulty sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

(Exh. B13F)  However, there is really nothing in the treatment notes that supports a finding of marked impairments in concentration, persistence or pace.")[9]  The ALJ thus concluded that Plaintiff had the mental RFC to perform light unskilled work.  (Tr. 25)

The record contains ample evidence supporting the ALJ's determination.  For example, Ms. Emerson consistently found that Plaintiff:  (1) presented as pleasant and cooperative with good mood, judgment and insight, and appropriate affect; (2) maintained good eye contact, normal speech, and linear, goal-directed thought processes and content; (3) had normal psychomotor activity with no involuntary movements noted; and (4) exhibited an absence of suicidal or homicidal ideation, delusions, and tangentiality or flight of ideas.[10]  Ms. Emerson frequently recommended that Plaintiff simply continue with her current medication regimen[11], and always suggested that Plaintiff return in two to four weeks, intervals that are inconsistent with treatment for severe mental impairment.[12]

Upon consideration of the foregoing, the Court finds substantial evidence in the record supports the ALJ's decision to incorporate some but not all of Ms. Emerson's limitations in his RFC determination.  *See Beyes v. Kijakazi*, No. 4:22CV614 SRW, 2023 WL 1765185, at *10 (E.D. Mo. Feb. 3, 2023) ("[A]n ALJ is not required to adopt or include all limitations assessed by a medical source, even if the source is found to be persuasive.").  *See also McCoy*, 648 F.3d at 615 (citation omitted) (in making an RFC determination, "we do not require an ALJ to mechanically list and reject every possible limitation"); *Cannady v. Colvin*, No. 4:14CV372 NKL, 2015 WL

---

[9] The ALJ further stated as follows:  "According to her Adult Function Report, the claimant has difficulty concentrating and completing tasks….However, the claimant denied difficulty concentrating at her primary care appointments."  (Tr. 18, citing Exhibit B10F/4 (Tr. 510))
[10] Tr. 446, 449, 452, 455, 458, 460, 493, 501, 561, 563, 565, 569, 571, 573, 575, 577, 579.
[11] Tr. 460, 493, 561, 575, 579.
[12] Tr. 447, 449, 452, 455, 458.

139762, at *5 (W.D. Mo. Jan 12, 2015) (an ALJ is not required to adopt all limitations proposed

by a medical source, even if the ALJ affords significant weight to the source's opinion); *McGee v.*

*Colvin*, No. 14-04035-CV-C-DGK-SSA, 2015 WL 58484, at *4 (W.D. Mo. Jan. 5, 2015) (citation

omitted) ("[a]n ALJ is not required to refute every alleged limitation.").

C.   The ALJ Properly Addressed The Consistency Of Dr. Hester's Medical Opinion

In her second point, Plaintiff complains the ALJ failed to comply with 20 C.F.R. §§

404.1520c and 416.920c, as he did not properly address the supportability and consistency factors

in relation to Dr. Hester's opinion.  Because Plaintiff filed her applications for benefits after March

2017, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c

and 416.920c.  Under these regulations, ALJs are directed to consider all medical opinions equally

and evaluate their persuasiveness according to several specific factors – supportability,

consistency, the medical source's relationship with the claimant, specialization, and other factors

such as the source's understanding of the Social Security Administration's disability policies.  20

C.F.R. §§ 404.1520c(c), 416.920c(c).  ALJs must "articulate in [their] determination or decision

how persuasive [they] find all of the medical opinions and all of the prior administrative medical

findings in [the] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and

consistency are the most important for an ALJ to consider, and the ALJ must "explain how he

considered the supportability and consistency factors . . . in [the] determination or decision."  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[13]  An ALJ's failure to address either the consistency

---

[13] "Supportability.  The more relevant the objective medical evidence and supporting explanations
presented by a medical source are to support his or her medical opinion(s) or prior administrative
medical finding(s), the more persuasive the medical opinions or prior administrative medical
finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)).  *See also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021).  An ALJ need not explain in his or her decision how he or she considered the other factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Dr. Hester completed a three-page physical MSS on November 3, 2021.  (Tr. 504-506)  In his MSS, Dr. Hester identified Plaintiff's diagnoses as hypertension, migraines, right knee pain, low back pain, and neck pain.  (Tr. 504)[14]  He described Plaintiff's symptoms as "pain, passing out, dizziness, falls, headaches, racing heart."  (*Id.*)  With respect to clinical findings and objective signs, Dr. Hester stated as follows:  "Xrays of the knee show moderate osteoarthritis.  Xrays neck show spondylosis.  Muscle tension and tenderness on lumbar and cervical spine."  (*Id.*)  As to treatment, as relevant here he stated Plaintiff takes propranolol for her racing heart, and Tylenol and Ibuprofen for pain.  (*Id.*)

The remainder of the MSS form is in a checklist format.  Dr. Hester checked boxes indicating that Plaintiff can rarely lift or carry 0 to 10 pounds, never lift or carry 10 pounds or more, and never twist, stoop, balance, crouch, crawl or climb.  (Tr. 505)  In the section titled "use of hands/arms," Dr. Hester said Plaintiff can rarely reach, but frequently handle, finger and feel. *Id.*  He opined Plaintiff can sit for up to 45 minutes without needing to change positions, and stand

---

"Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[14] Dr. Hester stated diagnoses of palpitations and syncope were "being evaluated."  (Tr. 504)

for ten minutes before needing to sit down or walk around.  *Id.*  In an 8-hour working day, Dr.

Hester estimated Plaintiff could sit for a total of 4 hours and stand for a total of less than one hour.

*Id.*  He stated Plaintiff would need to shift positions at will, from sitting, standing or walking, and

take unscheduled 5-10 minute breaks every 45 minutes.  (Tr. 505-506)[15]  Finally, Dr. Hester

indicated Plaintiff was incapable of low stress work, would likely be off task 25% of the time in

an 8-hour day, and would miss work more than 4 days per month.  (Tr. 506)

> The ALJ considered Dr. Hester's MSS and came to the following conclusions:

> The opinion is not persuasive because the extreme limitations included are
> not supported by the record, including Dr. Hester's own treatment notes and
> other medical evidence of record.  For example, his findings that the
> claimant is not able to work a normal eight-hour day, would need a five to
> ten minute break every 45 minutes, be off task at least 25% of the time, and
> be absent more than four days a month simply are not supported by
> persuasive evidence.  Although he was not treating her mental health
> impairments, Dr. Hester found she was incapable of performing even low
> stress work.  These limitations appear to be based to some extent on
> nonmedically determinable impairments and symptoms reported by the
> claimant, but unsupported by objective medical evidence.[16]

(Tr. 23)

Plaintiff complains the ALJ did not use the word "inconsistent" when evaluating Dr.

Hester's medical opinion, but failure to do so is not grounds for automatic reversal.  *See Atwood*

*v. Kijakazi*, No. 4:20CV1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (citations

omitted) ("The fact that the ALJ did not use the word[]… 'consistency' is not determinative; word

---

[15] According to Dr. Hester, it was not necessary for Plaintiff to use a cane, "but is considering it." (Tr. 506)  It is unclear to the Court whether it is Plaintiff or Dr. Hester who is considering requiring Plaintiff to utilize a cane.

[16] Plaintiff visited Dr. Hester on November 3, 2021, to get her disability paperwork filled out.  (Tr. 516)  At that time Dr. Hester noted that Plaintiff claimed sharp pain, 8/10 on the pain scale, mostly in her right knee, sharp pain in her lumbar spine, between 6/10 and 10/10 on the pain scale, and an ability to sit for 45 minutes before needing to move around.  (Tr. 520)  Dr. Hester appears to have incorporated these self-reported limitations into his MSS.

18

choice alone does not warrant reversal."). In his opinion, the ALJ cited to objective medical records that were inconsistent with Dr. Hester's limitations. For example, when Plaintiff established care with Dr. Hester on January 19, 2021, she complained of arthralgias/joint pain in her right knee,. (Tr. 480) Dr. Hester reported Plaintiff's motor strength and tone were normal, however, as was her gait. (*Id.*) He sent Plaintiff for an x-ray of her knee, and the finding was moderate osteoarthritis involving the medial and patellofemoral compartments. (Tr. 484) On March 16, 2021, Plaintiff complained of back pain in the cervical and lumbar spine, and pain and numbness in her fingers going up through her shoulders. (Tr. 475) She underwent an x-ray of her cervical spine that day, and the finding was mild spondylosis. (Tr. 482)[17] Plaintiff also received a Kenalog injection in her right knee.[18] (Tr. 476) Plaintiff returned to Dr. Hester on April 13, 2021, complaining again about her right knee and falling. (Tr. 531) At this time Dr. Hester again noted normal motor strength, motor tone and gait, but stated Plaintiff had tenderness along the joint of the right knee. (Tr. 535)[19] He ordered an x-ray of Plaintiff's knee, which again revealed moderate osteoarthritis. (Tr. 551) The ALJ cited to these records in his opinion, before concluding as follows:

> In sum, the claimant's physical impairments do not support a more restrictive functional capacity than that which has been outlined above. The claimant's treatment has been limited to right knee injections on two occasions. The images of her knee do not indicate a condition so severe that she is unable to stand, as she alleged. In addition, she has not had a follow-up MR of her cervical spine, and there is no imaging of her lumbar spine. The claimant has not had any urgent care treatment, emergency treatment, or inpatient hospitalizations. The claimant has not been referred to therapy or advised to consult with an orthopedist about her allegedly disabling back and knee impairments. Her only treatment has been pain medication prescribed by her primary care physician.

---

[17] The radiologist recommended an MRI for further analysis, but there is no indication this was ever performed. (Tr. 553)
[18] Plaintiff received a second Kenalog injection in her right knee on July 13, 2021. (Tr. 529)
[19] Dr. Hester's reports were similar on July 13, 2021, and November 3, 2021. (Tr. 528, 521)

(Tr. 20)

Upon consideration of the foregoing, the Court finds the ALJ adequately addressed the consistency factor.  "By stating that Plaintiff's physical examinations do not show the level of dysfunction [Plaintiff's medical expert] suggested, the ALJ sufficiently considered and articulated the consistency of [the expert's] medical opinion with other evidence in the record."  *McClellan v. Kijakazi*, No. 5:20CV6083 DGK, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) (internal quotation marks omitted).  *See also Beyes*, 2023 WL 1765185, at *9 (internal quotation marks and citation omitted) ("The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment. When read in context, as part of the overall discussion of Plaintiff's RFC, the Court finds the ALJ appropriately considered and supported the determination with substantial medical and nonmedical evidence.").  The Court thus finds the ALJ did not err in his consideration of Dr. Hester's opinion.

## VI.    Conclusion

Where the record contains substantial evidence supporting the ALJ's decision, this Court may not reverse the ALJ's decision simply because substantial evidence exists in the record that might have supported a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.").  Here, the ALJ's decision,

and therefore, the Commissioner's, was within the "zone of choice." *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

Dated this 31st day of October, 2023.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE